James R. ROBERTS, on behalf of himself and all others similarly situated, Plaintiff,

v.

MAGNETIC METALS COMPANY, Magmetco, Inc., D. C. Langworthy, and Butcher & Singer, Inc., Defendants.

Civ. A. No. 78–23.

United States District Court, D. New Jersey.

Dec. 21, 1978.

On Renewal of Motion for Summary Judgment Jan. 17, 1979.

936

Philip S. Fuoco, Haddonfield, N. J., and Richard D. Greenfield, Greenfield & Schoen, P. C., Bala Cynwyd, Pa., for plaintiff.

John V. Fiorella, Archer, Greiner & Read, Haddonfield, N. J., and Arthur Makadon, John B. Langel, Joanne L. Thomas, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for defendants Magnetic Metals Co., Magmetco, Inc. and D. C. Langworthy.

David Gutin, Camden, N. J., and Roslyn G. Pollack, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for defendant Butcher & Singer, Inc.

## OPINION

BROTMAN, District Judge.

### I. *Factual Background*

Plaintiff James R. Roberts has filed this class action complaint against Magnetic Metals Company [hereinafter Metals], Magmetco, Inc., Butcher & Singer, Inc., and D. C. Langworthy, president of both Metals and Magmetco, for alleged violations of the Securities Exchange Act of 1934, as amended, 15 U.S.C. § 78aa *et seq.* [hereinafter the 1934 Act]. Various pendent state claims are also alleged.

Prior to June 25, 1975, plaintiff was the record holder of 600 shares of Metals common stock. At that time Metals was a publicly-held company, eighty-four percent of whose common stock was owned by defendant Langworthy and members of his family. In early May 1975, Langworthy announced a proposed merger of Metals with a newly-formed corporation, Magmetco, of which he was also the president. Under the proposed merger, the non-Langworthy shareholders were to receive $6.50 in cash for each share of Metals stock. The merger was contingent upon two-thirds approval of these 194,330 non-Langworthy shares. After approval by the S.E.C., the defendants mailed proxy materials to each record holder of Metals stock as of May 22,

1975. At the meeting of the stockholders on June 25, 1975, the merger was approved with only 37,426 of the non-Langworthy shares voting in the negative. This action was commenced on January 5, 1978, two and one half years after the merger vote.

There are three counts to the complaint. Count I alleges that the May 31 proxy statement was false and misleading and caused the plaintiff to approve the merger despite grossly inadequate consideration in violation of section 14(a) of the 1934 Act and Rule 14a–9.[1] Count II incorporates the factual allegations of Count I by reference. It is alleged that such facts also state a claim under section 10(b) of the 1934 Act and Rule 10b–5.[2] Count III alleges that the same actions of defendants Metals and Langworthy violated their fiduciary duties to plaintiff. It is finally claimed that the merger amounted to common law and statutory fraud.

Defendants Metals, Magmetco, and Langworthy have moved for summary judgment pursuant to Fed.R.Civ.P. 56 on the ground that the federal securities claims are barred by the statute of limitations. Defendant Butcher & Singer, a broker and dealer in securities which rendered a pre-merger opinion concerning the fair value of the Metals common stock, joins in this motion for summary judgment. Additionally, Butcher urges the court to dismiss the complaint for plaintiff's failure to plead adequately fraudulent concealment and for failure to allege the requisite scienter. In each instance a violation of Fed.R.Civ.P. 9(b) is claimed. All defendants urge that, because the federal claims are time-barred, the court lacks pendent jurisdiction over the state claims. Both sides have submitted extensive and thorough briefs. Oral argument was heard on April 21, 1978. The court will deal with the various counts of the complaint seriatim.

1.  Section 14(a) reads:

> (a) It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commissions may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect to any security (other than an exempted security) registered pursuant to 78*l* of this title.

15 U.S.C. § 78n(a).

Rule 14a–9 provides in pertinent part as follows:

> (a) No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a–9(a).

2.  Section 10(b) reads:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
>
> (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

> The text of Rule 10b–5 reads as follows:
>
> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, on connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

II. *Section 10(b) and Rule 10b–5 Claims (Count II)*

Unlike other federal securities statutes, section 10(b) of the 1934 Act does not contain its own statute of limitations.[3] In *Ernst & Ernst v. Hockfelder,* 425 U.S. 185, 210 n.29, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), the Supreme Court indicated that, in the absence of a relevant federal statute of limitations, the law of limitations of the forum state should be applied in actions under the 1934 Act. In this case, the parties agree that New Jersey law controls but differ over which is the appropriate law. Although the Court did not address this issue in *Ernst & Ernst,* other Supreme Court decisions have indicated that the "most analogous" or "most appropriate" statute should be used. *See Occidental Life Ins. Co. v. E. E. O. C.,* 432 U.S. 355, 53 L.Ed.2d 402, 97 S.Ct. 2447, 2455 (1977); *Johnson v. Railway Exp. Co.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). In a section 10(b) action, the Court of Appeals for the Second Circuit has indicated that the court should apply the most similar statute which best effectuates the purpose of the federal legislation. *Berry Petroleum Company v. Adams & Peck,* 518 F.2d 402, 407 (2nd Cir. 1975); *Brick v. Dominion Mortg. & Rlty. Trust,* 442 F.Supp. 283, 301 (W.D.N.Y.1977); *see Gelman v. Westinghouse Electric Corp.,* 556 F.2d 699, 701 (3rd Cir. 1977). In this case, the parties are at loggerheads as to whether the limitations provision governing the New Jersey Uniform Securities Law (commonly known as the blue sky law)[4] or common law fraud[5]

---

**3.** Civil liabilities under sections 11 and 12(2) of the Securities Act of 1933, 15 U.S.C. §§ 77k and 77*l*(2) are limited to one year after the violation should have been discovered. A three year outside limit is also included. 15 U.S.C. § 77m. Similar limitations provisions are included in sections 9(e), 18(c), and 29(b) of the Securities Exchange Act of 1934. 15 U.S.C. §§ 78i(e), 78r(c), and 78cc(b). A two year limitation provision is included in section 16(b) of the 1934 Act. 15 U.S.C. § 78p(b). A persuasive argument has been made that these provisions, rather than analogous state statutes, should apply in actions brought under section 10(b). *See* Loss, Securities Regulation, *infra* at 3898–3900.

**4.** N.J.S.A. 49:3–71 provides in pertinent part as follows:

  (a) Any person who . . .
  (2) offers or sells a security by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), is liable to the person buying the security from him, who may sue to recover the consideration paid for the security, together with interest at 6% per year from the date of payment and costs, less the amount of any income received on the security, upon the tender of the security and any income received on it, or for damages if he no longer owns the security; provided, however, that the person buying the security must sustain the burden of proof that the seller knew of the untruth or omission and intended to deceive the buyer, and provided further that the buyer has suffered a financial detriment. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at 6% per year from the date of disposition; . . .
  (e) No person may sue under this section more than 2 years after the contract of sale. The entire New Jersey Uniform Securities Law, N.J.S.A. 49:3–47 *et seq.,* is modeled primarily upon the Uniform Securities Act which was an outgrowth of many years of study by the American Bar Association, the National Conference of Commissioners on Uniform State Laws, and Harvard Law School (most notably Professor Louis Loss). *See* Loss, Securities Regulation (2d Ed. 1961) 90–105. The term "blue sky law" came into use in the early twentieth century. State securities regulation was seen as a remedy for unscrupulous promoters who "would sell building lots in the blue sky in fee simple." *Id.* at 26 quoting Mulvey, Blue Sky Law, 36 Can. L.T. 37 (1916). The limitation provision of the New Jersey statute, N.J.S.A. 49:3–71(e), is modeled upon section 410(e) of the Uniform Securities Act.

**5.** The catchall provision of N.J.S.A. 2A:14–1 reads as follows:

  Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14–2 and 2A:14–3 of this title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued.

applies. The former statute limits the time for commencing an action to "2 years after the contract of sale" whereas the latter allows an action to be commenced within six years of the date of the fraud.

The defendants point to a large number of cases holding that a state's blue sky provision, rather than a statute governing common-law fraud, applies to actions brought under section 10(b). *See, e. g., Forrestal Village, Inc. v. Graham,* 179 U.S. App.D.C. 225, 551 F.2d 411 (1977); *Dupuy v. Dupuy,* 551 F.2d 1005 (5th Cir. 1977); *Fox v. Kane-Miller Corp.,* 542 F.2d 915 (4th Cir. 1976); *Parrent v. Midwest Rug Mills, Inc.,* 455 F.2d 123 (7th Cir. 1972); *Vanderboom v. Sexton,* 422 F.2d 1233 (8th Cir.), *cert. denied,* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970); *Brick v. Dominion Mortg. & Rlty. Trust, supra.* Defendants stress the similarities between the New Jersey blue sky statute and the federal action under section 10(b). They argue that scienter is a necessary element of both the state and federal securities action. *Brick, supra* at 304; *cf. Garnatz v. Stifel, Nicolaus & Co.,* 559 F.2d 1357, 1363 (8th Cir. 1977). They emphasize the similarity in language between the New Jersey Uniform Securities Law and 10(b), and, perhaps most importantly, urge that:

> "[t]he [blue sky] statute promotes the full and accurate disclosure of information in connection with stock sales, precisely the same purpose as that of Rule 10b–5." *Dupuy, supra* at 1024 n.31; *see Brick, supra* at 304.

The plaintiff attempts to distinguish the cases relied on by the defendants and also puts forward a not insubstantial number of cases holding that a general fraud provision is more appropriate for section 10(b) than a state's blue sky law. *See, e. g., IDS Progressive Fund v. First Michigan Corp.,* 533 F.2d 340 (6th Cir. 1976); *Arneil v. Ramsey,* 550 F.2d 774 (2nd Cir. 1977); *Jenne v. Amrep Corp.,* No. 77–0487 [CCH Fed.Sec.Rptr. ¶ 96,343] (D.N.J., filed February 14, 1978);

*Klapmeier v. Peat, Marwick, Mitchell & Co.,* 363 F.Supp. 1212 (D.Minn.1973). The plaintiff disputes defendants' proposition that the intent requirements of both statutes are the same. He urges that the New Jersey's Uniform Law provides no relief to a seller of securities who is defrauded in the sale, that damages are more restricted in New Jersey than under section 10(b), and that the New Jersey statute contains a privity requirement. He contends that the purpose of the federal securities laws is remedial and thus, irrespective of which statute is superficially more analogous, federal courts should apply the longer statute of limitations. Taking into account these distinguishing factors, plaintiff urges application of N.J.S.A. 2A:14–1.

The court is impressed with plaintiff's well-reasoned attempts to distinguish the current situation from the cases relied on by the defendants. Undoubtedly, there are several important differences between a section 10(b) action and the remedy provided by the New Jersey Uniform Securities Law. Most notably, the New Jersey law provides no cause of action for an aggrieved seller of securities. In fact the legislative history of section 102(a) of the Uniform Securities Act, upon which the New Jersey law was modeled,[6] disputes the need for a statutory provision:

> Although the lower federal courts have uniformly implied a civil cause of action against fraudulent buyers under the SEC rule, the federal courts when applying federal law do not have at their disposal all of the common-law and equitable remedies of deceit and rescission which are available to the state courts without benefit of statute.
> Loss & Cowett, *Blue Sky Laws, supra* (App. I) at 252.

Since the plaintiff in this action has no possible remedy under the New Jersey blue sky law and since the legislative history

---

This section shall not apply to any action for breach of any contract for sale governed by section 12A:2–725 of the New Jersey Statutes. As amended L.1961, c. 121, p. 723, § 1.

**6.** *See* note 4, *supra.* The entire Uniform Securities Act, complete with official comment and the draftsmen's commentary, is set out in Appendix I of Loss and Cowett, Blue Sky Laws (1958).

specifically refers aggrieved buyers to the common law, a credible argument exists that the six-year limitation provision of N.J. S.A. 2A:14–1 should apply. Furthermore, it is arguable that section 10(b) and Rule 10b–5 provide a broader remedy than the Uniform Securities Act. Since the former provisions encompass any manipulative or deceptive device used in contravention of SEC rules and since the New Jersey statutory restriction is limited to untrue statements of material facts, a common-law fraud action might be thought to more nearly resemble an action under section 10(b). *But see Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 1299–1304, 51 L.Ed.2d 480 (1977). Finally, while damages are allowed under both section 10(b) and the New Jersey Uniform Law, there is little dispute that damages under the latter statute are much more restricted. For this reason too, a common-law fraud action is thought to be more analogous to a section 10(b) action.

■ Despite the absence of a seller remedy under New Jersey's Uniform Securities Act and despite other pertinent distinctions between section 10(b) and New Jersey's statute, the court believes that the two-year provision of N.J.S.A. 49:3–71(e) should control the time within which the instant suit must be filed. To begin at the most obvious level, there are many similarities in wording between the New Jersey blue sky provision and section (b) of Rule 10b–5. *See Brick, supra* at 304. As mentioned earlier, this is because the state provision was specifically modeled on the federal provision. Furthermore, the mens rea elements are not noticeably different. In New Jersey a buyer of securities must show that "the seller knew of the untruth or omission and intended to deceive the buyer." N.J.S.A. 49:3–71(a)(2). At the present time, scienter or intent is a necessary allegation in any action brought pursuant to section 10(b) or Rule 10b–5. *Ernst & Ernst, supra; see Cramer v. General Telephone & Elect. Corp.,* No. 77–2372, 582 F.2d 259 at 273 (3rd Cir. 1978). Additionally, plaintiff's "privity" argument is erroneous. The plain wording of the New Jersey statute, similarly to the federal law, provides for actions against anyone who "materially aids" or "directly or indirectly controls" the primary defendant. *See* N.J.S.A. 49:3–71(b).

■ While it is possible to discuss at length the similarities and distinctions between section 10(b) and the New Jersey Uniform Securities Law, such nuances would tend to confuse rather than clarify the problem. The duty of this court is not to apply the limitations period of the state statute under which the plaintiff might obtain relief. Were this the controlling question, the six-year fraud provision would necessarily apply. This court's analysis, as mentioned earlier, must instead focus on: (1) the most similar or analogous statute which; (2) best effectuates the purpose of the federal legislation. *Berry, supra* at 407; *Brick, supra* at 301. As far as the first part of the analysis is concerned, there is little question that the New Jersey Uniform Securities Law, as opposed to common-law fraud, more nearly resembles the Securities Exchange Act of 1934. The wording of the statutes is parallel and the New Jersey law is, in part, modeled on the 1934 Act. Indeed, a primary statutory policy of the New Jersey law is "to co-ordinate the interpretation and administration of [the New Jersey law] with related Federal regulations." N.J.S.A. 49:3–75; *see State v. Russell,* 119 N.J.Super. 344, 350, 291 A.2d 583 (App.Div. 1972).

■ The second part of the limitations analysis necessitates an examination of the Federal policy behind securities' regulation. As plaintiff correctly points out, one of the primary purposes of these federal laws is to compensate aggrieved sellers and buyers for the losses they sustain on account of proscribed securities practices. *See Berry, supra* at 409. At the same time, as in all limitations questions, there is frequently a point after which policymakers decide to compromise a law's remedial purposes in favor of counterveiling policies. In the securities field, these counterveiling policies include the elimination of stale claims, the elimination of uncertainty in corporate ven-

tures, the prevention of harassment of corporations by disappointed market investors, and the maintenance of corporate businesses free from the drain of expensive and frequently prolonged litigation. In the field of securities regulation Congress has consistently resolved this balancing analysis in favor of relatively short limitations periods in private civil suits. Civil liabilities under sections 11 and 12(2) of the Securities Act of 1933 [15 U.S.C. §§ 77k and 77*l*(2)] are limited to one year after the violation should have been discovered, or three years at the outside. [15 U.S.C. § 77m]. Identical provisions are provided in sections 9(e), 18(c), and 29(b) of the Securities Exchange Act of 1934. [15 U.S.C. §§ 78i(e), 78r(c), and 78cc(b)]. Actions under section 16(b) of the 1934 Act [15 U.S.C. § 78p(b)] are limited absolutely to two years after the event. Indeed, Professor Louis Loss, a draftsman of the Uniform Securities Act and eminent scholar in the field of securities regulation, has suggested that these federal limitations provisions would be much more appropriate for a section 10(b) action than *any* analogous state limitations section. Loss, Securities Regulation, *supra* at 3898–3900.

Based on the close similarity in purpose between the Securities Exchange Act of 1934 and the New Jersey Uniform Securities Law and because of Congress' consistent policy in opting for relatively short limitation periods in other sections of the 1933 and 1934 Acts, the court finds N.J.S.A. 49:3–71(e) more appropriate as a standard for section 10(b) actions.[7]

III. *Section 14(a) and Rule 14a–9 Claims (Count I)*

■ Plaintiff also alleges that the proxy materials distributed in support of the Metals-Magmetco merger in June 1975 were false and misleading in violation of section 14(a) of the Act and Rule 14a–9 promulgated thereunder. The facts supporting this claim are similar to the section 10(b) claim and are set forth in forty-one paragraphs in Count I. The defendants urge that the two-year statute contained in N.J.S.A. 49:3–71(e) likewise bars this section 14(a) action while plaintiff argues that, even if the two-year statute applies to the section 10(b) claims, the six-year fraud statute applies to the section 14(a) claims.

To begin with, it is clear that a section 14(a) action is different from one brought under section 10(b). In *Cramer v. General Telephone & Electronics,* 443 F.Supp. 516 (E.D.Pa.1977), *aff'd* No. 77–2372, 582 F.2d 259 (3rd Cir. 1978), the court pointed out that, in order to maintain a claim under section 14(a), a plaintiff must show "that specific proxy statements were materially false and misleading, that there was a causal connection between the alleged violation of the proxy rules, and the injury suffered by the plaintiff. [citations omitted]." Moreover, the Third Circuit has held that negligence, not scienter, is enough to hold individuals liable under section 14(a). *Gould v. American-Hawaiian Steamship Co.,* 535 F.2d 761, 777 (3rd Cir. 1976).

Despite these differences, there are two reasons why the court feels compelled to apply the blue sky statute and not the general fraud provision. First, although the sections are usually employed in different contexts, in a merger situation (such as the present) where the alleged fraud involves misrepresentations in connection with a minority stockholder's sale of stock to the merging interest, the two sections overlap. *Cf. SEC v. National Securities, Inc.,* 393 U.S. 453, 468, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969); *Joyce v. Joyce Beverages, Inc.,* 571 F.2d 703 (2nd Cir. 1978).[8] Since

---

7. In this conclusion the court is also joined by Professor Loss who has found it "odd" that other courts, if not willing to apply analogous federal statutes, have not at least applied the state securities statutes modeled on the Uniform Securities Act. Loss, Securities Regulations, *supra* at 3902.

8. Indeed, actions by shareholders challenging a merger which was allegedly approved on the basis of false and misleading proxy materials have been decided solely under section 10(b), *Kohn v. American Metal Climax, Inc.,* 458 F.2d 255 (3rd Cir.), *cert. denied,* 409 U.S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972), solely under

the action sought to be restrained is similar, all of the considerations that call for application of the blue sky statute in a section 10(b) action apply with equal force. Second, insofar as the plaintiff seeks to distinguish a section 14(a) action from a section 10(b) action, the arguable distinctions weigh in favor of applying a *shorter* rather than a longer statute of limitations. In *Gould, supra,* the Third Circuit stated:

[S]ection 14(a) and Rule 14a–9(a) may be more closely analogized to section 11 of the Securities Act of 1933 [than to section 10(b) of the 1934 Act], as amended by the Act of 1934, 15 U.S.C.A. § 77k, which deals with civil liability for false registration statements. Each section . . . proscribes a type of disclosure or lack of it, i. e., false or misleading statements or omissions of material facts, and each enumerates specific classes of individuals who bear liability for failure to meet the required standard of disclosure. Moreover, each involves single specific documents which are of primary importance in two fundamental areas of securities regulation, sales of securities and the exercise of the shareholders' voting power. 535 F.2d at 777.

The fact that causes of action under section 11 must be brought within the time limitations of the one to three year federal statute [15 U.S.C. § 77m] indicates that a section 14(a) action should receive similar treatment for limitations purposes.[9] Thus, the court finds the two-year New Jersey blue sky provision more appropriate for a section 14(a) action and federal policy will best be effectuated by its use. *Berry, supra* at 407.

IV. *Tolling Provisions/Fraudulent Concealment*

Application of the New Jersey blue sky law does not necessarily put an end to plaintiff's action even though the lawsuit was not initiated until two and one half years following approval of the merger.

Plaintiff seeks to avail himself of the doctrine of fraudulent concealment. He urges that, as a matter of law, he did not wait unreasonably long in conducting an investigation or filing suit. Defendants acknowledge the doctrine of fraudulent concealment but claim that plaintiff had all the information involving the so-called fraud on May 31, 1975, the date the proxy materials were mailed. Additionally, defendant Butcher & Singer seeks dismissal because the plaintiff has failed to aver specifically the facts underlying the alleged fraudulent concealment.

The applicable statute of limitations normally begins to run when the plaintiff discovers the fraud or in the exercise of reasonable diligence should have discovered the fraud. *Hupp v. Gray,* 500 F.2d 993 (7th Cir. 1974); *Klein v. Shields,* 470 F.2d 1344 (2nd Cir. 1972); *Osadchy v. Gans,* 436 F.Supp. 677 (D.N.J.1977). When the statute begins to run is a question of federal law, *Stull v. Bayard,* 561 F.2d 429, 432 (2nd Cir. 1977); *Arneil v. Ramsey,* 550 F.2d 774 (2nd Cir. 1977), and is often but not always called the doctrine of fraudulent concealment. *See Hupp v. Gray, supra; Morgan v. Koch,* 419 F.2d 993 (7th Cir. 1969); *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946). Where there are sufficient facts available to the plaintiff to put him on notice of the fraud, *Arneil, supra,* or when the circumstances should arouse his suspicion, *Hupp, supra,* the statute begins to run. The statute is not tolled where the plaintiff is merely unaware of the facts or law, *Morgan, supra,* but only where the plaintiff seeks to learn the facts in the exercise of reasonable care and diligence. *Id.* Of course the statute does not await plaintiff's leisurely discovery of the fraud. *Klein v. Bower,* 421 F.2d 338, 343 (2nd Cir. 1970); *see Osadchy v. Gans, supra* at 681–83.

section 14(a), *Gould, supra,* or under both sections 10(b) and 14(a). *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374 (2nd Cir. 1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975).

**9.** As mentioned earlier, Professor Loss has suggested that the federal limitations themselves should apply. *See* Loss, Securities Regulation, *supra* at 3898–3900.

In seeking to avoid the impact of the New Jersey Uniform Securities Law, plaintiff avers:

> Plaintiff acted reasonably and with due diligence at all times. Plaintiff discovered defendants' material omissions and misrepresentations only after employing legal counsel to investigate and report. Plaintiff could not in the exercise of due diligence have discovered the fraud alleged herein at any time prior to the completion of the investigation and report of such counsel because defendants at all times acted to suppress and fraudulently conceal all facts and information regarding their fraudulent and otherwise illegal conduct.

Complaint, ¶ 19.

The court agrees with defendant Butcher & Singer that the conclusory allegations in paragraph 19 fail to satisfy the pleading requirements of fraudulent concealment and Fed.R.Civ.P. 9(b). *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389 (6th Cir. 1975); *Brick v. Dominion Mortg. & Rlty. Trust, supra* at 291–92; *Kroungold v. Triester,* 407 F.Supp. 414 (E.D.Pa.1975); *Premier Industries v. Delaware Valley Financial Corp.,* 185 F.Supp. 694 (E.D.Pa. 1960); *see generally* C. Wright and A. Miller, *Federal Practice and Procedure,* §§ 1297, 1298 (1969). Plaintiff has failed to assert what actions by the defendants constituted the alleged suppression of facts. He has failed to elaborate why such facts were not discoverable within the two-year statute and has failed to allege with particularity why it took him so long to consult with his attorney and why they needed so much time to prepare a complaint.

Despite the failure of the plaintiff, the court is not inclined at this time to dismiss the complaint. *Compare Brick, supra* at 292, *with Premier Industries, supra* at 696–97. The plaintiff indicates in his brief in opposition to this motion that he became aware of the alleged fraud only after defendant Langworthy sold out his shares in Magmetco to Inductotherm, Inc., in 1977 for a price equal to more than $14.00 per old Metals' share. While these allegations are clearly not sufficient to carry the plaintiff's burden on the tolling issue as a matter of law, it is not altogether evident that, if presented in proper form, these facts would be inadequate to defeat summary judgment. For the most part, courts have agreed that the tolling or fraudulent concealment issue is properly resolved on a motion for summary judgment only if there is no evidence from which a jury could conclude that plaintiff, in the exercise of reasonable diligence, should not have discovered the alleged fraud within the limitations period. *See Arneil, supra* at 781; *Fox v. Kane-Miller Corp., supra* at 917, *affirming,* 398 F.Supp. 609, 626–29 (D.Md.1975); *Kubik v. Goldfield,* 479 F.2d 472, 477 n.12 (3rd Cir. 1973); *Klein v. Bower,* 421 F.2d 338, 343–44 (2nd Cir. 1970); *Johns Hopkins University v. Hutton,* 422 F.2d 1124, 1131 (4th Cir. 1970); *Berry, supra* at 410–11; *cf. Brick, supra* at 304–05.[10]

■ Because of plaintiff's limited burden in this regard, at least insofar as a jury is concerned, the court will grant plaintiff twenty days to amend his complaint to meet the particularity requirements of Fed. R.Civ.P. 9(b) and the fraudulent concealment doctrine. Furthermore, as per defendants' alternative request, the court shall allow sixty days to take discovery limited to the tolling or fraudulent concealment issue. *See Defensive Instruments, Inc. v. RCA Corp.,* 385 F.Supp. 1053 (W.D. Pa.1974), *aff'd,* 530 F.2d 963 (3rd Cir. 1976). When the tolling issue has been properly elucidated through amendment of the pleadings and discovery, the court will decide if the issue is properly for the jury or the court.[11]

---

**10.** There are several cases which, while not specifically mentioning the judge/jury function, imply that fraudulent concealment is an equitable doctrine and therefore exclusively within the court's province to decide. *See, e. g., Stull v. Bayard, supra* at 431; *Klein v. Shields, supra* at 1346–47. However, the role of the jury, where disputed factual questions exist, is clear in this circuit. *See, e. g., Goodman v. Mead Johnson,* 534 F.2d 566, 570–75 (3rd Cir. 1976).

**11.** The plaintiff disputes the propriety of considering defendants' appendix to their brief on

## V. *Miscellaneous Contentions*

■ Defendant Butcher & Singer argues that Count II should be dismissed against it for failure to allege scienter or intent, required in actions under section 10(b). *Ernst & Ernst, supra; Gross v. Diversified Mortgage Investors,* 438 F.Supp. 190 (S.D. N.Y.1977); *Weinberger v. Kendrick,* 451 F.Supp. 79, CCH–Fed.Sec.Law Rptr. ¶ 96,378 (S.D.N.Y.1978). The court has examined the complaint and finds that paragraphs 8, 15, 17, and 18, satisfy the pleading requirements of *Ernst & Ernst* and Rule 9(b). *See Cramer v. General Telephone, supra* at 272–273.

■ Finally, the court shall not exercise its pendent jurisdiction over the common law claims unless it finds that a jury issue exists respecting the tolling provisions of the New Jersey blue sky limitations period. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## VI. *Conclusion*

Defendants' motion for summary judgment based on the statute of limitations is, for the time being denied, as is the motion of Butcher & Singer to dismiss for failure to plead fraudulent concealment with particularity. The motion of Butcher & Singer to dismiss for failure to comply with Rule 9(b) is denied. The discovery order heretofore entered with the consent of the parties shall be modified to allow discovery limited solely to the tolling problem. The appropriate order shall be entered.

## ON RENEWAL OF MOTIONS FOR SUMMARY JUDGMENT

Defendants Magnetic Metals Company [hereinafter "Metals"], Magmetco, Inc., Butcher & Singer, Inc., and D. C. Langwor-

thy have renewed their motions for summary judgment. The court previously ruled on these motions, holding that a two-year statute of limitations applies to the alleged violations of the Securities Exchange Act of 1934, Sections 10(b) and 14(a), and Securities and Exchange Commission [hereinafter "SEC"] Rules 10(b)–5 and 14(a)–9. The complaint was filed some two and one-half years after the proxy materials at issue were mailed and the merger therein discussed was approved.

However, the court ruled that if the plaintiff could plead facts sufficient to allege fraudulent concealment, he could avail himself of the equitable doctrine whereby the statute of limitations is tolled until the plaintiff discovered or, in the exercise of reasonable diligence, should have discovered the fraud alleged. Plaintiff amended his complaint to allege that, due to defendants' acts of fraudulent concealment, he was not aware of illegalities until defendants Magmetco and Langworthy sold their stock interests in Metals for substantially more than plaintiff was offered for his stock two years earlier pursuant to the merger. The instant motions were then renewed, defendants claiming that the amended complaint is insufficient to create a jury question as to the date of discovery from which the statute of limitations began to run.

Specifically, defendants contend that plaintiff's amended complaint, like the original, does not plead fraudulent concealment with particularity, as required by Fed.R. Civ.P. 9(b). Defendants also argue that the allegations in the complaint, as well as materials filed as part of an appendix to defendant Magmetco's brief, demonstrate that plaintiff did not exercise the requisite diligence in discovering the fraud, and therefore the statute of limitations was not tolled. After a careful comparison of the

---

this motion for summary judgment. However, the plaintiff has not disputed the authenticity of any of the documents therein relied on in support of this motion. Further, defendants have authenticated the appendix materials through the affidavit of Herbert Risley, the vice-president of Metals at the time of the pro-

posed merger. The submission of such an appendix is entirely proper in a motion for summary judgment pursuant to Fed.R.Civ.P. 56. The documents shall be filed with the clerk and considered in resolving the tolling or fraudulent concealment issue. *See* C. Wright and A. Miller, *Federal Practice and Procedure* § 2722.

original and amended complaints, and a thorough consideration of plaintiff's affidavit in opposition to these renewed motions as well as the oral argument, the court must agree with defendant. No genuine issue of material fact exists creating a jury question as to due diligence.

Originally formulated in the case of *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1875), the doctrine of fraudulent concealment does not require active concealment by the defendant, but does place a positive duty upon the plaintiff to diligently inquire in order to discover the fraud alleged. *Arneil v. Ramsey*, 550 F.2d 774 (2nd Cir. 1977); *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir. 1975); *Morgan v. Koch*, 419 F.2d 993 (7th Cir. 1969); *Rosenberg v. Hano*, 121 F.2d 818 (3rd Cir. 1941).[1] The burden is on the plaintiff to show he exercised reasonable care and diligence in seeking the facts that demonstrate fraud. *Brick v. Dominion Mortgage & Realty Trust*, 442 F.Supp. 283, 304 (W.D.N.Y.1977); *Osadchy v. Gans*, 436 F.Supp. 677, 682 (D.N.J.1977); *Hupp v. Gray*, 500 F.2d 993, 996 (7th Cir. 1974). Furthermore, a complaint is insufficient if it merely states in conclusory fashion that due diligence was exercised; plaintiff must specifically allege what steps he took prior to the running of the limitations period to discover the facts constituting fraud. *Brick v. Dominion Mortg. & Realty Trust, supra* at 292; *Kroungold v. Triester*, 407 F.Supp. 414, 419 (E.D.Pa.1975); *Dayco Corp. v. Goodyear Tire & Rubber Co., supra* at 394; *Hupp v. Gray, supra* at 996.

In paragraph 21 of the amended complaint, plaintiff makes the same conclusory allegations of due diligence and fraudulent concealment made in paragraph 19 of the original complaint. The only substantial difference is that the new complaint incorporates by specific reference the allegations of the fraud which constitutes the substantive offenses. These allegations are virtually identical to those in the original complaint. Only where the substantive fraud includes active concealment directly thwarting diligent efforts to discover wrongdoing can that substantive fraud suffice to toll the statute of limitations. *See Tomera v. Galt*, 511 F.2d 504, 510 (7th Cir. 1975).[2] If this were not so, there would be, in effect, no statute of limitations on any fraud action.

The price of the stock and the expressions of dissatisfaction with that price at the time of the merger demonstrate that plaintiff had reasonable notice of the alleged fraud. Courts have repeatedly held that where there is any fact or circumstance which would arouse the suspicions of a reasonable person, that person has sufficient notice so that he must make inquiry. *Dayco Corp. v. Goodyear Tire & Rubber Co., supra* at 394; *Hupp v. Gray, supra* at 966; *Morgan v. Koch, supra* at 998. Where a plaintiff should have been aware of "at least the possibility of fraud," the limitations period begins to run. *Klein v. Shields & Co.*, 470 F.2d 1344, 1347 (2nd Cir. 1972).

In other words, the time which the statute of limitations begins to run is not

---

1. *Rosenberg*, as well as other cases cited *infra*, involved allegations of wrongdoing under the Securities Act of 1933, 15 U.S.C. § 77a *et seq.* Section 13 of that Act, 15 U.S.C. § 77m, contains an explicit time limitation. Actions under the Act must be brought within one year after actual discovery of an untrue statement or omission or after the time when the discovery "should have been made by the exercise of reasonable diligence." This statutory language is analogous to the state statutes of limitation and the judicially-developed doctrine of fraudulent concealment of concern here. *See Kubik v. Goldfield*, 479 F.2d 472, 477 n.12 (3rd Cir. 1973). Therefore, cases dealing with the time when the limitations period begins to run for actions under the 1933 Act are applicable to the instant problem and will be cited as authority.

2. Plaintiff cites *Tomera* in support of his position. However, there are no allegations of affirmative concealment here which would make that case apposite. There, the plaintiff alleged that defendants refused to supply him with various documents which would have revealed the fraud. Here, by contrast, no such allegations of demand for and refusal of documents are made. Indeed, the correspondence included in the appendix to defendants' brief belies any withholding of documents. Appendix, pages 61–64.

when the plaintiff becomes aware of all aspects of the fraud, but rather the time when he should have discovered the general fraudulent scheme. *Berry Petroleum Co. v. Adams & Peck,* 518 F.2d 402, 410 (2nd Cir. 1975); *Osadchy v. Gans, supra* at 682. As stated in the often-quoted case of *Klein v. Bower,* 421 F.2d 338, 343 (2nd Cir. 1970), the statutory period does not await plaintiff's "leisurely discovery of the full details" or "full enormity" of the fraudulent scheme.

In paragraphs 15 and 21 of the amended complaint, plaintiff alleges there was a wide disparity between the price offered the minority shareholders and the book value of the stock. As plaintiff's counsel noted in oral argument, the book value of a stock does not necessarily indicate its true value. But the difference between the price and book value should at least have alerted plaintiff to the possibility of fraud and caused him to investigate further.

Plaintiff and the potential class members originally paid $12.00 per share for their stock, and were offered only $6.50 per share under the merger proposal. This also should have caused them to inquire about the financial condition of Metals, the manner of valuation, and whether there was a misrepresentation or manipulation of the price.

Indeed, it is clear from the materials in the appendix to defendants' brief that a number of minority shareholders were highly dissatisfied at the time of the merger approval with the offered price. Many of them, including plaintiff's father, verbalized that dissatisfaction at the June 25, 1975 meeting at which the merger was ratified. Appendix, p. 53. Plaintiff was present at that meeting. Appendix, p. 57. Moreover, plaintiff's father wrote to the vice president of Metals before the meeting to express his dissatisfaction with the price offered and to threaten a class suit. This letter was written on stationery whose business letterhead includes plaintiff's name. Appendix, p. 1.[3]

A drop in stock price contrary to a plaintiff's expectations is often held to be a circumstance which should have indicated the possibility of fraud and prompted further investigation. *See Berry Petroleum Co. v. Adams & Peck, supra; Hupp v. Gray, supra; Rosenberg v. Hano, supra.* Similarly, in the instant case, the suspiciously low price offered to minority shareholders like plaintiff provided sufficient notice of fraud to trigger the running of the limitations period.

In assessing a plaintiff's claim that he could not have discovered the fraud earlier, consideration of the nature of the specific fraud alleged is also appropriate. *See Morgan v. Koch, supra* at 997. Here, the fraud alleged is misrepresentation and omission in the proxy statement, masking acts of illegal manipulation designed to force out minority stockholders at an unreasonably low price. All the allegations derive directly from material in the proxy statement. Had plaintiff carefully reviewed it at the time of the events here at issue and conducted an investigation into the statements contained in it, this action could have been brought well within the limitations period. For instance, the complaint alleges that defendants fraudulently failed to increase dividends or publicly disseminate information concerning

**3.** During argument on the original motions, there was some disagreement as to whether (a) the court could properly consider these materials and (b) whether plaintiff's father's actions could be attributed to plaintiff. As to the first contention, the court stated in its first opinion on these motions that consideration of the appendix materials is proper on a motion for summary judgment. Plaintiff has submitted nothing in response to contest the validity of the appendix documents, as he is compelled to do by Fed.R.Civ.P. 56(e). As to the second contention, at oral argument on these renewed motions, plaintiff submitted a letter, marked "P–1," from the SEC to plaintiff's father apparently in response to the father's inquiry about the proxy materials at issue. This letter is referred to several times in the complaint, ¶¶ 15, 16. Plaintiff must take the good with the bad, and cannot adopt his father's actions which support his position while rejecting those which do not. In addition, plaintiff's father is a potential member of the class which plaintiff seeks to represent. Therefore, it is appropriate to consider plaintiff's father's actions at the time of the merger as bearing on plaintiff's knowledge of the possibility of fraud.

Metals, actions which allegedly depressed the market for its stock. Amended Complaint ¶ 15(a). The dividend history of Metals was in the proxy statement, and was necessarily known to holders of Metals stock. The shareholders must also be charged with substantial awareness of the marketability of their stock. Similarly, another allegation is that the proxy materials failed to disclose why defendant Butcher & Singer did not use a particular method of calculating the value of plaintiff's stock. Amended Complaint ¶ 15(d). The report of Butcher & Singer was made available to shareholders at the meeting at which the merger was approved. *See* Proxy Statement, appendix, p. 11. The method of valuation could have been challenged as of that time. The widespread dissatisfaction with the price makes plaintiff's failure to investigate the method employed by Butcher & Singer particular suspect.

This is not a case where the alleged fraud is the kind that only sophisticated investors would recognize. Compare *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 494 F.2d 168 (10th Cir. 1974), where the court ruled that a jury question was created as to due diligence because the fraud alleged, "churning," is conduct with which the average investor is unfamiliar and cannot readily recognize.

Plaintiff's principal counterargument is that he was misled by the SEC into thinking there was no basis for a federal cause of action. In response to an inquiry from plaintiff's father, the SEC sent a letter, dated May 21, 1975, which stated: "It would appear that adequate disclosure was made to the shareholders of Magnetic concerning this offer." Plaintiff contends this obscured any clues of fraud that would have put him on notice of wrongdoing until the sale of the Langworthy stock. The court cannot agree. The other indicia of possible fraud were substantial enough to put plaintiff on notice despite the noncommital letter from the agency.

Plaintiff also alleges that he only learned of the fraud after employing legal counsel to investigate. But there is nothing to indicate why such an investigation could not have been undertaken at the time of the merger approval. Indeed, at oral argument, plaintiff admitted that the alleged fraud could have been uncovered in an earlier investigation. All the allegations in paragraph 15 of the complaint, particularly in regard to defendant Butcher & Singer, could have been discovered by a plaintiff exercising due diligence within the two-year period. By contrast, in *Vanderboom v. Sexton*, 422 F.2d 1233 (8th Cir. 1970), the court found that the complicated internal structure of the corporation and its involved accounting procedures created a jury question as to whether an accurate accounting, which plaintiffs claimed put them on belated notice of the fraud could have been made earlier. No such circumstances are alleged in the instant case to explain the delayed investigation. In fact, plaintiff and others had consulted an attorney within the two-year period. Their counsel wrote a letter, dated December 30, 1976, to the vice-president of Magmetco stating that his clients "presently contemplate legal action, on behalf of themselves and all others similarly situated, concerning all shares of Magnetic Metals Company" and also stating "[m]y clients further intend to assert any and all claims which may be allowed by law . . . ." Appendix, p. 65.

It is clear, then, that plaintiff suspected wrongdoing well within the limitations period and before the sale of the Langworthy stock. Since plaintiff's failure to exercise due diligence in the face of indications of fraud is apparent from facts in the complaint as well as in the undisputed documents submitted in support of this motion, dismissal of the complaint is proper. *See Berry Petroleum Co. v. Adams & Peck, supra* at 410; *Arneil v. Ramsey, supra* at 781; *Hupp v. Gray, supra* at 997. There are no conflicting inferences relative to due diligence which justify submission of the question to the jury. *See Osadchy v. Gans, supra* at 683 n.4.

For the foregoing reasons, we hold there is no genuine issue of material fact as to due diligence, and the statute of limitations

was not tolled. Therefore defendants are entitled to judgment as a matter of law, and the complaint is dismissed.