**Paul OSADCHY and Norma Osadchy, Plaintiffs,**

v.

**Joseph GANS, Irene Gans, John Walson and Service Electric Cable T.V., a corporation of the State of Pennsylvania, Defendants.**

**Civ. A. No. 76–800.**

United States District Court,
D. New Jersey.

July 20, 1977.

Pessin & Holopigian by L. Steven Pessin, Hackensack, N. J., for plaintiffs.

Harper & O'Brien by Thomas R. O'Brien, Morris Plains, N. J., for defendants Gans.

Schenck, Price, Smith & King by David B. Rand, Morristown, N. J., for defendants Walson and Service Elec. Cable T.V.

COOLAHAN, Senior District Judge.

Defendants move pursuant to Fed.R. Civ.P. 56(b) for summary judgment on the grounds that plaintiffs' action is barred (1) by the statute of limitations and (2) by the doctrines of res judicata and/or collateral estoppel. Jurisdiction is predicated on both diversity, 28 U.S.C. § 1332, and § 22 of the Securities Act of 1933, 15 U.S.C. § 77v(a), and § 27 Securities Exchange Act of 1934, 15 U.S.C. § 78aa. Plaintiffs claim they were defrauded by defendants into selling their 50% interest in Garden State C.A.T.V., Inc., a cable television corporation (hereinafter Garden State).

Defendants, Joseph and Irene Gans, John Walson, and Service Electric Cable T.V., argue that the present action is merely an attempt to relitigate issues resolved by the New Jersey Superior Court in an action filed in 1969. Plaintiffs, Paul and Norma Osadchy, contend that the discovery of new facts previously unknown to them and the New Jersey trial court precludes summary judgment in this action.

On June 2, 1969, Paul Osadchy and his wife, Norma, filed an action in the Chancery Division of the Superior Court of New Jersey in Sussex County. The action was docketed as *Paul Osadchy and Norma Osadchy, his wife, v. Joseph Gans, Irene Gans, John Walson, Garden State C.A.T.V., Inc., a corporation of the State of New Jersey, and Service Electric Cable T.V.,* *Inc., a corporation of the State of Pennsylvania,* Docket No. C–2632–68. *See,* Exhibit A to Rand affidavit in support of motion for summary judgment. The action charged that Irene Gans, Paul Osadchy's sister, and her husband, Joseph, breached their fiduciary duty to plaintiffs and induced plaintiffs through misrepresentation, fraud and deceit to sell their closely held family corporation. John Walson, the principal shareholder of the purchasing corporation, Service Electric Cable T.V., Inc. (hereinafter Service Electric), and the purchasing corporation itself were added as defendants on a conspiracy theory. Additionally, Walson and Service Electric were sued for breach of a two-year employment contract with plaintiff Paul Osadchy. Plaintiffs sued defendants on such other theories as unjust enrichment and violation of § 5 of the Uniform Securities Law (1967). Plaintiffs also alleged that the Gans concealed their relationship to the purchaser, John Walson, in order to defraud plaintiffs into selling their interest at a price much below its worth.

Judge Joseph H. Stamler, New Jersey Superior Court, ordered on May 7, 1971, that plaintiffs brief the SEC standard of fraud. His order noted that "plaintiff abandons claim under SEC Act." On May 25, 1971, he ordered that those portions of plaintiffs' complaint which constituted a shareholders' derivative action were dismissed. He also ordered:

". . . With consent of the plaintiffs, the Fifth Count of the Complaint, based upon alleged violations of the Securities Exchange Act of 1934 and the Rules promulgated thereunder, is dismissed. The Court recognizes that this dismissal is without prejudice to plaintiffs attempting to introduce at trial the aforesaid statutes and rules as evidence of fraud . . . ."[1]

*See* Exhibit E to Rand affidavit.

It was undisputed that the parties entered into a contract of sale of Garden

---

1. The fifth count of the complaint alleged that interstate communications (such as mails and phones) were employed along with manipulative or deceptive devices to defraud plaintiffs.

15 U.S.C. § 77q(a) (§ 17(a) Securities Act of 1933); 15 U.S.C. § 78j(b) (10(b) Securities Exchange Act of 1934); Rule 10(b)–5.

State on June 23, 1967. The closing was held two months later, on August 22, 1967. According to the terms of the sale, the Osadchys would receive the first $20,000 of the proceeds, the remaining proceeds to be divided equally between the Gans and the Osadchys, each of whom owned half of the corporation. The contract called for the sale of all Garden State issued and outstanding capital stock for $290,000, less the liabilities of the corporation. Osadchy received additional compensation in the form of an oral agreement of employment with Garden State.

The nonjury trial took 32 days. On September 25, 1972, Judge Stamler filed an extensive opinion setting forth his findings of fact and conclusions of law. On October 10, 1972, a final judgment was entered against plaintiffs on all claims. On June 26, 1974, the Appellate Division of the Superior Court, in a short per curiam opinion, affirmed Judge Stamler for the reasons stated in his opinion. *See,* Exhibit I to Rand affidavit. Certification to the New Jersey Supreme Court was denied with costs on December 11, 1974, 66 N.J. 336, 331 A.2d 36. Judge Stamler found that plaintiffs and defendants Joseph and Irene Gans resigned as officers and directors of the company and delivered their shares of Garden State as required by the contract. Exhibit F to Rand affidavit, Judge Stamler's September 25, 1972, opinion, pp. 7R–S. He also found that there were no false misrepresentations as to material facts, that the contract was made at arms length, and that the purchase price was adequate and, in fact, was above fair market value. Judge Stamler noted that Osadchy received $20,000 more than Gans from the sale of the corporation, which further belied Osadchy's contention of fraud.

Plaintiffs now seek to relitigate these issues on the ground that they have recently discovered new facts supporting their allegations of fraud. The Osadchys argue that it was not until August of 1975 that they realized how they had been defrauded.

Paul Osadchy stated in his affidavit in support of his motion for summary judgment (¶ 4):

" . . . It was not until late August, 1975, when my attorney showed me the documents annexed to his affidavit that I realized how I had been defrauded."

Paul Osadchy states in his affidavit, ¶ 5, that "[t]he possibility that Joseph Gans only pretended to sell his stock and John Walson pretended to buy it was never *seriously* considered in the prior litigation." (Emphasis added.) According to the affidavit of L. Steven Pessin, Osadchy's attorney, the check drawn on Walson's account to the order of Joseph Gans bears no notation or mark on its face indicating that it was canceled. The endorsement reads "Joseph and Irene Gans," yet it is payable to Joseph Gans alone. The endorsement, plaintiffs claim, if made crosswise, is wider than the check. This check, dated August 22, 1967, appears on Fidelity Union Trust Company's cash disbursement ledger as having been drawn on it on September 1, 1967.

The inference plaintiffs seek to draw from this newly discovered evidence is that the Gans never really sold, or at least later sold, their interest in Garden State. Additionally, plaintiffs claim that the Gans only pretended to sell their interest when the Osadchys sold theirs in order to eliminate the Osadchys from the business. The purpose of this alleged deception was to defraud the Osadchys of their interest in the corporation, whose value greatly exceeded that received by the plaintiffs.

◼ Defendants' first contention is that they are entitled to summary judgment based on the fact that the present action is barred by the applicable statute of limitations. The defense of statute of limitations is one properly resolved on a motion for summary judgment. *Turner v. Lundquist,* 377 F.2d 44, 46 (9th Cir. 1967), citing 3 Barron & Holtzoff, *Federal Practice & Procedure,* Rules edition, § 1245, p. 206.

The principal allegations of the present complaint seek recovery under federal securities law. *See,* 15 U.S.C. § 77q(a) (§ 17(a) Securities Act of 1933); 15 U.S.C. § 78j(b) (10(b) Securities Exchange Act of 1934); Rule 10(b)–5. There is no federal statute of limitations which applies to actions based on securities fraud. Consequently, this Court must look to analogous State law of the forum to determine if suit is timely brought. *Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *Berry Petroleum Co. v. Adams & Peck,* 518 F.2d 402, 406 (2d Cir. 1975); *Saylor v. Lindsley,* 391 F.2d 965, 970 (2d Cir. 1968). The federal court should select the forum State's statute of limitations which corresponds to a State cause of action most similar to the federal one and which best effectuates its purpose. *Berry Petroleum Co. v. Adams & Peck,* at 407; *Hudak v. Economic Research Analysts,* 499 F.2d 996, 999 (5th Cir. 1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975).

We turn then to the law of New Jersey, the forum. Movants claim that whether this Court looks to N.J.S.A. 49:3–71(e), which states that suit under the Uniform Securities Law, N.J.S.A. 49:3–47, *et seq.,* must be commenced within two years of the contract of sale, or to N.J.S.A. 2A:14–1, which permits suit within six years,[2] the present action is barred. Clearly, the cause of action arose in 1967, some nine years before suit was commenced in the present action. Therefore, movants are correct in their assertion that whichever statute of limitations the Court chooses to apply, the present action appears barred.

However, plaintiffs contend that the statute of limitations was tolled by defendants' fraudulent concealment of the facts in this case. Additionally, plaintiffs contend that if the Court looks to N.J.S.A. 2A:14–1, the operative language is "accrues," *see* fn. 2, *supra,* and plaintiffs contend that New Jersey law does not recognize an action for fraud to have accrued until the discovery of the fraud.[3]

In order to take advantage of the doctrine of fraudulent concealment, plaintiffs must show sufficient evidence to warrant the conclusion that defendants concealed the basic facts disclosing the existence of the cause of action and that plaintiffs remained in ignorance of those facts through no fault of their own. *Holmberg v. Armbrecht, supra,* 327 U.S. at 397, 66 S.Ct. 582; *Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1875); *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1297 (7th Cir. 1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976); *Carpenter v. Hall,* 311 F.Supp. 1099, 1107 (S.D.Tex.1970). As the court stated in *Hupp v. Gray,* 500 F.2d 993, 996 (7th Cir. 1974), "[i]t is well established that a plaintiff may not merely rely on his own unawareness of the facts or law to toll the statute. *Morgan v. Koch,* 419 F.2d 993, 997 (7th Cir. 1969)".

In the action at bar, it is clear that plaintiffs knew of the existence of the alleged fraud, or had reason to know of it, as early as January, 1968, as Judge Stamler found. He stated (Exhibit F, p. 7T):

"A part-time employee, Leroy Vandermark, testified that early in January 1968 he told [Paul] Osadchy that he overheard Walson say to Praeg [a management level employee of the new Garden State] on December 5, 1967 (the day that Osadchy was being tested by FAA for his pilot's

2. N.J.S.A. 2A:14–1 reads:

"Every action at law for trespass to real property, for any tortious injury to real or personal property, for taking, detaining, or converting personal property, for replevin of goods or chattels, for any tortious injury to the rights of another not stated in sections 2A:14–2 and 2A:14–3 of this title, or for recovery upon a contractual claim or liability, express or implied, not under seal, or upon an account other than one which concerns the trade or merchandise between merchant and merchant, their factors, agents and servants, shall be commenced within 6 years next after the cause of any such action shall have accrued."

3. Plaintiffs claim they discovered the facts of the fraud only when they took John Walson's deposition in another litigation on August 20, 1975, one year before this suit was commenced.

license) that '*It took a long time for Gans and me to screw Paul out of the business, but it didn't take us long to get him out of his job.*' Osadchy testified that when Vandermark told him of this, Osadchy was utterly shocked at this important disclosure." (Emphasis added.)

Judge Stamler found Vandermark incredible, especially in light of the fact that despite the "shocking" effect this story had, plaintiffs failed to mention it to their attorney, who was hired only to sue for breach of the employment contract. *See,* Exhibit F, p. 7U. Despite the fact that Vandermark's testimony was incredible, plaintiffs should be estopped from now disavowing it. If the story had been true, it would have given plaintiffs knowledge of the alleged fraud over eight years before action was commenced in this case. Even if the Court disregards this Vandermark story, certainly plaintiffs cannot assert that they lacked knowledge of the alleged fraud at the time of suit in June of 1969, more than seven years before the present action.

Despite the fact that plaintiffs' discovery of new "facts" enlarges upon their knowledge of the alleged fraud and its parameters, the fact remains that the test is whether plaintiffs knew or should have known of the fraud. The earlier action indicates that they knew of the alleged fraud. Plaintiffs invite this Court to draw a distinction between the fraud and conspiracy to defraud they litigated in the earlier action, and the fraud alleged in the case at bar, which is that the Gans did not sell their shares in Garden State. The end result of the alleged frauds in both instances is the same, involving the same defendants and arising out of the same allegedly fraudulent actions and for the same ends. The Court finds this distinction to be without a difference. Plaintiffs knew of the alleged fraud, and should not now be heard to complain because they did not "seriously" contemplate the particulars of the fraudulent scheme.

In *Klein v. Bower,* 421 F.2d 338, 343 (2d Cir. 1970), the court found it of "no moment" that the plaintiff had not discovered until after his State trial on the same issues the full enormity of the operation of defendants. The court concluded that the plaintiff had sufficient knowledge to put him on notice as to the alleged fraud as early as 1961. The court refused to await the plaintiff's leisurely discovery of the full details of the fraud.

Similarly, in *Hupp v. Gray, supra,* 500 F.2d at 996–997, the court held that the plaintiff seeking the defense of fraudulent concealment to the assertion of the bar of the statute of limitations must bear the burden of showing reasonable care and diligence in seeking to learn of the alleged fraud. The court concluded that the plaintiff knew of facts (the downward turn in the price of stock he was allegedly fraudulently induced to buy by defendants, who promised him a quick increase in price), which should have aroused suspicion or curiosity. The court held, in addition, that the fiduciary relationship between plaintiff and defendants was not enough to invoke the doctrine of fraudulent concealment. *See also, Turner v. Lundquist, supra,* 377 F.2d at 46–48.

 As the court noted in *Berry Petroleum Co. v. Adams & Peck, supra,* 518 F.2d at 410:

"This court has previously noted that the time from which the statute of limitations begins to run is not the time at which a plaintiff becomes aware of all of the various aspects of the alleged fraud, *but rather the statute runs from the time at which plaintiff should have discovered the general fraudulent scheme.* '[T]he statutory period . . . [does] not await [plaintiff's] leisurely discovery of the full details of the alleged scheme.' *Klein v. Bower,* 421 F.2d 338, 343 (2d Cir. 1970)."

There is no question that plaintiffs knew or had reason to know of the "fraudulent scheme" at least as late as June 2, 1969. Therefore, plaintiffs may not avail themselves of the doctrine of fraudulent concealment. Nor does this Court find that State law is to the contrary. The New Jersey courts likewise impose a duty to act reasonably with respect to the discovery of the

alleged wrong or injury. *Federal Insurance Co. v. Hausler,* 108 N.J.Super. 421, 424, 261 A.2d 671 (App.Div.1970); *Joseph v. Lesnevich,* 56 N.J.Super. 340, 355, 153 A.2d 349 (App.Div.1959).

Consequently, the Court must find that this action is barred by the statute of limitations.[4]

■ Alternatively, the Court finds movants' second argument, that the present action is barred by the doctrines of res judicata and/or collateral estoppel, persuasive. What plaintiffs seek to do here is to relitigate issues presented to the State courts through the State's highest court. Certainly, the District Court can neither serve as an appellate tribunal to review New Jersey court decisions, nor can this Court entertain a collateral attack on issues presented to a State trial court. In essence, however, this is exactly what the present action seeks to do. This Court is compelled to recognize the finality of the State court judgment where the judgment was rendered by a court of competent jurisdiction.

This Court has some difficulty with the application of res judicata as a bar to this action, but certainly not with collateral estoppel.

■ Res judicata is defined as an absolute bar to a subsequent action between the same parties or their privies upon the same claim, or claims that might have been raised, in the earlier action if the earlier action was decided on the merits. 1B Moore, *Federal Practice,* § .405[1], p. 621. The prior action is scrutinized to determine if it is the same cause of action, or claim, as the one against which the doctrine of res judicata is advanced as a bar. 1B Moore, *Federal Practice,* § .410, p. 1154.

Here, movants claim that the State common law actions of fraud, deceit, etc., involve the same standards and findings as is required under federal securities law. It seems to this Court, however, that because Judge Stamler dismissed the federal securities count in the complaint without prejudice,[5] there is some question us to whether this cause of action was raised or could have been raised. However, it may be that the New Jersey action for fraud is the same cause of action as is the federal one now sought to be advanced, especially in light of Judge Stamler's reliance on federal standards in the trial of the action in State court.

Movants rely on *Connelly v. Balkwill,* 174 F.Supp. 49 (N.D.Ohio 1959), *affirmed,* 279 F.2d 685 (6th Cir. 1960). *Balkwill* involved a federal action commenced five years after a State action concluded on the same transaction. There, plaintiffs claimed that they were induced by fraudulent misrepresentations to sell their shares in the Frog Company. Plaintiffs alleged that there was a secret agreement between Balkwill, who owned part of the Frog Company, and the buyers, to reconvey, after the alleged sale, plaintiffs' shares to Balkwill, and then retire plaintiffs' shares as treasury stock. This would make Balkwill the sole owner of the corporation. When Balkwill did sell the corporation, he realized a large undisclosed profit. In the State court action judgment was rendered for Balkwill. Five years later plaintiffs began suit in federal court charging Balkwill with violations of Rule 10(b)–5.

■ In *Balkwill* the State trial was lengthy and extensive. On appeal the matter was retried. 174 F.Supp. at 54. The State courts found that the plaintiffs were

---

**4.** There are no conflicting inferences to make here. Hence, summary judgment on this issue is not improper. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hupp v. Gray, supra,* 500 F.2d at 997; *Klein v. Bower, supra,* 421 F.2d at 344.

The State causes of action raised in diversity are likewise barred by the six-year statute of limitations.

**5.** There is authority for the proposition that federal courts have exclusive jurisdiction over Rule 10(b)–5 actions, 15 U.S.C. § 78aa. *Con-*

*nelly v. Balkwill,* 174 F.Supp. 49, 56 (N.D.Ohio 1959), *affirmed,* 279 F.2d 685 (6th Cir. 1960). Consequently, Judge Stamler's dismissal of count 5 may have been compelled by his lack of jurisdiction over the subject matter. If, then, the State action for fraud was not the same cause of action as one under Rule 10(b)–5, then the fact that it was an action *which could not have been raised in the prior proceeding* prevents the prior action from having a res judicata effect on this action.

not induced to enter into the sale by representations of Balkwill, nor were any false representations made to plaintiffs as to any material fact, nor did the plaintiffs place confidence in Balkwill or rely on his statements. 174 F.Supp. at 54–55. The plaintiffs argued that a Rule 10(b)–5 action was a different cause of action than was the State action for fraud; hence, there could be no res judicata effect given to the first judgment. The court noted (174 F.Supp. at 56) that though State courts do not have jurisdiction of Rule 10(b)–5 actions involving the use of interstate facilities, it did not follow that State actions for fraud in the purchase or sale of securities were not the same cause of action. To determine whether an action pursuant to Rule 10(b)–5 is the same for purposes of res judicata as a State action for fraud, it is necessary to examine State law to see if the elements of the causes of action are the same and require the same quantum of proof. This Court, however, finds that this issue need not be reached in light of movants' assertion of collateral estoppel as a bar. Clearly, plaintiffs are collaterally estopped from bringing the present action.

The doctrine of collateral estoppel was succinctly articulated by the Supreme Court in *United States v. International Building Co.*, 345 U.S. 502, 504–505, 73 S.Ct. 807, 808–809, 97 L.Ed. 1182 (1953), *quoting Cromwell v. County of Sac*, 94 U.S. 351, 352–353, 24 L.Ed. 195 (1876):

" 'But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.' "

A similar definition appears in the *Restatement of Judgments*, § 68, p. 293, quoted in *Connelly v. Balkwill, supra*, 174 F.Supp. at 60:

" . . . Where a fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between the parties in a subsequent action on a different cause of action."

In *Balkwill*, the Court alternatively found that the doctrine of collateral estoppel barred relitigation of the facts of the fraud, because the State court decided those questions. It should also be noted that the *Balkwill* Court held that the subsequent action was barred as well by the statute of limitations.

■ The case at bar bears an uncanny similarity to *Balkwill*, as movants note. Judge Stamler found specifically that there had been no fraud, that there were no material misrepresentations, and that no reliance was placed by plaintiffs on what defendants said or did. He found, additionally, that the transactions were at arms length, and that the compensation was more than fair and above market value, Osadchy receiving, in fact, more than Gans. Osadchy, he found, was as eager to sell as was Gans. Furthermore, Osadchy knew that Gans and Walson had known each other for years. He did not go into the sale with his eyes closed. Therefore, these factual findings should not be relitigated. The State court was one of competent jurisdiction to decide those facts and did so on the merits of the case. The parties in the case at bar are the same as those before Judge Stamler. *See,* 1B Moore, *Federal Practice*, § .441(2). This Court may not inquire into whether or not Judge Stamler erred. 1B Moore, § .405(4.–1), pp. 635–636. *See also, United States v. Throckmorton*, 98 U.S. 91, 25 L.Ed. 93 (1968).

■ As movants note, to maintain a Rule 10(b)–5 action, plaintiffs need to show scienter and an intent to deceive, manipulate or defraud. *Ernst and Ernst v. Hochfelder*, 425 U.S. 219, 96 S.Ct. 1375, 47 L.Ed.2d 668, 677 (1976). Reliance on mate-

rially false representations need be shown. *Landy v. Federal Deposit Insurance Co.,* 486 F.2d 139 (3d Cir. 1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974). Federal securities law protects individuals damaged through the sale or purchase of securities when the sale was made in reasonable reliance on the misrepresentations of defendants. *Financial Programs, Inc. v. Falcon Financial Services, Inc.,* 371 F.Supp. 770 (D.Or.1974). The test for reliance in securities actions is whether the fraud constituted a substantial factor in determining the course of plaintiff's conduct which resulted in his loss. *Gordon v. Burr,* 366 F.Supp. 156 (S.D.N.Y.1973), *aff'd in part, rev'd in part on other grounds,* 506 F.2d 1080 (2d Cir. 1974). Clearly, these factual issues were determined by Judge Stamler. Consequently, plaintiffs are collaterally estopped from raising them here. The Court must conclude that plaintiffs' action is barred as well by the doctrine of collateral estoppel.

Defendants' motion for summary judgment is granted. Counsel will submit an order in conformity with this opinion.