FOODTOWN, a New Jersey
Corporation, Plaintiff,

v.

SIGMA MARKETING SYSTEMS, INC.
and ARA Services, Defendants.

Civ. A. No. 80–1859.

United States District Court,
D. New Jersey.

Nov. 18, 1980.

On Renewed Motion to Dismiss
July 23, 1981.

Wilentz, Goldman & Spitzer by Christine D. Petruzzell, Woodbridge, N. J., for plaintiff.

McCarter & English by William H. Horton, Newark, N. J., for defendants.

## OPINION

CLARKSON S. FISHER, Chief Judge.

This case is before me on defendants' motion to dismiss the complaint on the ground that the entire action is barred by the four-year statute of limitations for the sale of goods set forth in N.J.S.A. 12A:2–725. Plaintiff's five-count complaint seeks damages on the bases of (1) breach of contract (Counts I and II), (2) fraud (Count III), (3) tortious misrepresentation (Count IV) and (4) unjust enrichment (Count V). For the following reasons, I find that defendants' motion to dismiss the complaint is, for the time being, denied.

Plaintiff, Foodtown, filed the complaint herein against Sigma Marketing Systems, Inc. (Sigma) and ARA Services on June 20, 1980, seeking damages based upon alleged overcharges by Sigma on Foodtown's purchase of certain dinnerware under a con-

tract (Agreement) executed by the parties on February 26, 1975. Plaintiff contends that the cost to Foodtown for the merchandise was to be Sigma's actual cost which is referred to in paragraph 1 of the Agreement as the landed cost. The merchandise was delivered to Foodtown during August and September 1975. Upon delivery of the merchandise, Foodtown paid the amounts demanded on the invoices, believing that these sums included only defendants' actual landed costs.

Foodtown contends that in February 1980 it learned for the first time that defendants had charged Foodtown at a rate in excess of their actual landed costs for the dinnerware. Specifically, Foodtown argues that the United States Customs' duty rate which defendants charged was 50% more than the duty rate actually paid by them upon importation of the merchandise. Upon repeated demand for a refund of the alleged overpayments, Foodtown commenced this action against defendants on June 20, 1980 to recover these amounts.

Defendants contend that the four-year statute of limitations for contracts for the sale of goods pursuant to N.J.S.A. 12A:2–725 bars any cause of action asserted by plaintiff. Plaintiff contends that the motion must be considered one directed solely to the First and Second Counts of the complaint because the four-year statute of limitations upon which defendants rely is only applicable to an action for the "breach of any contract for sale." N.J.S.A. 12A:2–725. Consequently, it is plaintiff's contention that the remaining counts of the complaint which charge fraud, misrepresentation and unjust enrichment are not the subject of, nor are they affected by, the motion presently before me. With regard to the breach-of-contract claims set forth in Counts One and Two, plaintiff argues that the applicable statute of limitations is the six-year period contained in N.J.S.A. 2A:14–1. In the alternative, plaintiff contends that even if the four-year statute of limitations set forth in N.J.S.A. 12A:2–725 is applicable to the breach-of-contract claims, (1) the First and Second Counts were timely filed because the cause of action alleged therein did not accrue until February 1980 upon Foodtown's discovery of the facts upon which this action is based; or (2) even if it is assumed that the cause of action accrued in 1975, the First and Second Counts were timely filed because the statute of limitations has been tolled by defendants' fraudulent concealment.

■ There can be no doubt that the instant case involves a contract for the sale of goods within the meaning of the Uniform Commercial Code. Accordingly, plaintiff's breach-of-contract claims are governed by the four-year-limitations period set forth in N.J.S.A. 12A:2–725. In pertinent part, the statute provides:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued . . .

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered . . .

. . . .

(4) This section does not alter the law on tolling of the statute of limitations . . .

Plaintiff's contention that the six-year statute of limitations pursuant to N.J.S.A. 2A:14–1 is applicable to the breach-of-contract claims is clearly without merit. An amendment to N.J.S.A. 2A:14–1 provides that "[t]his section shall not apply to any action for breach of any contract for sale governed by section 12A:2–725 of the New Jersey Statutes." L. 1961, c. 121, p. 723, § 1.

■ I do not find plaintiff's allegations set forth in Counts One and Two to be collateral or ancillary to the contract for sale. See N.J.S.A. 12A:2–701. N.J.S.A. 12A:1–201 defines contract as the "total legal obligation which results from the par-

ties' agreement as affected by this Act and any other applicable rules of law." The alleged overcharges on the contract price are not so distinct from the actual contract for the sale of goods as to make the four-year statute of limitations inapplicable by virtue of N.J.S.A. 12A:2–701.

Plaintiff's contention that the discovery principle is applicable to the instant case is likewise without merit. I have found no New Jersey cases which apply the discovery principle to a breach-of-contract claim governed by the Uniform Commercial Code. To the contrary, the plain language of the statute and the applicable case law make clear that in a contract dispute such as this one the cause of action accrues when *tender of delivery* is made, regardless of the aggrieved party's lack of knowledge of the breach, except where the warranty explicitly extends to future performance. *See* N.J.S.A. 12A:2–725(2); *Plumb v. Cottle,* 492 F.Supp. 1330, 1336 (D.Del.1980) (cause of action accrues when tender of delivery is made); *Raymond v. Eli Lilly and Company,* 412 F.Supp. 1392, 1403 (D.N.H.1976) (breach of warranty occurs when the tender of delivery is made regardless of the aggrieved party's knowledge of the breach). In *Gates Rubber Co. v. USM Corp.,* 508 F.2d 603, 613 (7th Cir. 1975), the court specifically refused to apply the discovery rule to toll the statute of limitations in a breach-of-contract case covered by the Uniform Commercial Code. Plaintiff does not dispute that the goods were delivered during August and September of 1975, more than four years ago. This is not a case where a warranty explicitly extends to future performance of the goods. As the causes of action set forth in Counts One and Two accrued when tender of delivery was made in 1975, the limitations period expired, at the latest, in September 1979. These causes of action are therefore time-barred, absent effective application of some tolling provision.

N.J.S.A. 12A:2–725(4) makes it clear that the limitations provisions set forth in that section were not intended to alter the common-law principles regarding the tolling of the statute of limitations. It

is well established in New Jersey that where there is fraudulent concealment of a cause of action the period of limitation will not commence until discovery of wrong or of facts which reasonably put one on notice. *Roberts v. Magnetic Metals Co.,* 463 F.Supp. 934, 943 (D.N.J.1978); *Osadchy v. Gans,* 436 F.Supp. 677, 681 (D.N.J.1977); *Kohler v. Barnes,* 123 N.J.Super. 69, 79, 301 A.2d 474 (Law Div. 1973); *Zimmerman v. Cherivtch,* 5 N.J.Super. 590, 593–94, 68 A.2d 577 (Law Div. 1949). Cases interpreting Section 2–725 of the Uniform Commercial Code have held that fraud will suspend the running of the statute of limitations. *United States v. Pall Corporation,* 367 F.Supp. 976, 979 (E.D. N.Y.1973); *Hoeflich v. William S. Merrell Co.,* 288 F.Supp. 659, 661 (E.D.Pa.1968).

In order to take advantage of the doctrine of fraudulent concealment,

plaintiffs must show sufficient evidence to warrant the conclusion that defendants concealed the basic facts disclosing the existence of the cause of action and that plaintiffs remained in ignorance of those facts through no fault of their own. *Holmberg v. Armbrecht, supra,* 327 U.S. 392 at 397, 66 S.Ct. 582, at 585, 90 L.Ed. 743; *Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1875); *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1297 (7th Cir. 1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976); *Carpenter v. Hall,* 311 F.Supp. 1099, 1107 (S.D.Tex.1970). As the court stated in *Hupp v. Gray,* 500 F.2d 993, 996 (7th Cir. 1974), "[i]t is well established that a plaintiff may not rely on his own unawareness of the facts or law to toll the statute. *Morgan v. Koch,* 419 F.2d 993, 997 (7th Cir. 1969)".

*Osadchy v. Gans,* 436 F.Supp. at 681. Fed. R.Civ.P. 9(b) specifically requires that "[i]n all averments of fraud or mistake, circumstances constituting fraud or mistake shall be stated with particularity."

In *Roberts v. Magnetic Metals Co., supra,* plaintiff sought to avoid the impact of the New Jersey Uniform Securities Law through application of the doctrine of fraudulent concealment. The court agreed

with defendants that the conclusory allegations in plaintiff's complaint failed to satisfy the pleading requirements of fraudulent concealment and Fed.R.Civ.P. 9(b). In the court's words:

> Plaintiff has failed to assert what actions by the defendants constituted the alleged suppression of facts. He has failed to elaborate why such facts were not discoverable within the two-year statute and has failed to allege with particularity why it took him so long to consult with his attorney and why they needed so much time to prepare a complaint.

*Roberts v. Magnetic Metals Co.*, 463 F.Supp. at 943. The court granted plaintiff twenty days to amend his complaint to meet the particularity requirements of Fed.R.Civ.P. 9(b). Plaintiff amended his complaint, and defendants renewed their summary judgment motions. In consideration of these renewed motions, the court stated:

> [A] complaint is insufficient if it merely states in conclusory fashion that due diligence was exercised; plaintiff must specifically allege what steps he took prior to the running of the limitations period to discover the facts constituting fraud. *Brick v. Dominion Mortg. & Realty Trust,* supra 442 F.Supp. 283 at 292; *Kroungold v. Triester,* 407 F.Supp. 414, 419 (E.D.Pa. 1975); *Dayco Corp. v. Goodyear Tire & Rubber Co., supra,* 523 F.2d 389 at 394; *Hupp v. Gray, supra* 500 F.2d 993 at 996.

*Roberts v. Magnetic Metals Co.*, 463 F.Supp. at 945.

Count Three of plaintiff's complaint contains allegations of fraud and misrepresentation in that Foodtown was induced to pay for the merchandise at a price in excess of that stated in the contract. Plaintiff has failed to assert in the complaint what actions by defendants constituted active concealment of the alleged fraud, and why such facts were not discoverable within the four-year-limitations period. Further, plaintiff has not, even in a conclusory allegation, specifically alleged the exercise of due diligence and reasonable care in seeking the facts that demonstrate fraudulent concealment. Despite the failure of plaintiff to comply with Fed.R.Civ.P. 9(b), I am not inclined to dismiss the complaint at this time. Plaintiff is granted ten days to amend the complaint to meet the particularity requirements of Fed.R.Civ.P. 9(b) and the fraudulent concealment doctrine. When this tolling issue has been properly elucidated through amendment of the pleadings and discovery, upon motion of defendants, the court will entertain objections to the applicability of the fraudulent concealment doctrine to the instant case.

Counts Three and Four of plaintiff's complaint are based on fraud and tortious misrepresentation. Plaintiff contends that these actions must be considered separate and apart from the breach of contract claims and that therefore the six-year-limitations period contained in the catch-all provision of N.J.S.A. 2A:14–1 is applicable to these counts. While it is possible that a breach of contract also gives rise to an actionable tort, I find that plaintiff's allegations in these counts are an attempt to dress up a contract claim in a fraud suit-of-clothes and consequently these counts must be dismissed inasmuch as they seek to establish a separate tort cause of action.

In *Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d 737 (2d Cir. 1979), plaintiff-appellant sought to recover damages for the alleged failure of performance of a computer system sold by appellees. The complaint alleged causes of action sounding in fraud, breach of contract and negligence. The district court dismissed the complaint on the basis that all claims asserted were time-barred. On appeal, the Second Circuit reversed dismissal of one of the fraud counts and affirmed dismissal of the other counts. Allegations of fraud appeared in Counts One, Two and Nine of the complaint. Count One alleged fraud in the inducement; Counts Two and Nine referred to alleged misrepresentations and concealments made after the parties had entered into a contractual relationship with each other.

The court stressed the distinctions between the allegations contained in Count One and those in Counts Two and Nine.

Central to the court's reasoning was that Count One involved a claim of fraud in the *inducement,* which is a fraud "extraneous to the contract," *Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d at 747, rather than a claim of fraud *after* the parties had entered into a contract. The court stated:

> The fraud Triangle alleges in Count I consisted of independent false representations, made before there ever was a contract between the parties, which led Triangle to enter into it. In other words, Triangle clearly alleges fraud that was extraneous to the contract, rather than a fraudulent non-performance of the contract itself. . . .
>
> This analysis does not apply to the allegations of fraud in Counts II and IX, since they refer to alleged misrepresentations and concealments made after the parties had entered into a contractual relationship with each other. Under the rule in *Brick,* these allegations do not state separate claims for the purposes of the statute of limitations.

*Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d at 747–48. *See Closed Circuit Corporation of America v. Jerrold Electronics,* 426 F.Supp. 361, 364–65 (E.D.Pa.1977) (transactions cannot be removed from the ambit of the Commercial Code to the area of tortious conduct simply by making general allegations of fraud—otherwise there would be no effective way of preventing almost every contract case from being converted to a tort for jurisdictional purposes). *See also Holdridge v. Heyer-Schulte Corp. of Santa Barbara,* 440 F.Supp. 1088, 1095 (N.D.N.Y.1977) (cause of action for fraudulent misrepresentation should not be treated as separate cause of action for statute-of-limitations purposes—in determining what period of limitations applies, the essence or gravamen of the action controls, rather than the form in which it is pleaded.

■ In the case at bar, Foodtown alleges fraud and false representation commencing in August 1975, six months after the parties had entered into a written agreement. Paragraph 16 of plaintiff's complaint clearly states that the alleged misrepresentations "were made with intent to deceive Foodtown and to induce Foodtown to pay for the merchandise at a price *in excess of that stated in the Agreement. . . .*" (emphasis added). The fraud contemplated by plaintiff here does not seem to be extraneous to the contract, but rather a "fraudulent non-performance of the contract itself," *Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d at 747. Since Counts Three and Four refer to alleged misrepresentations and concealments made after the parties had entered into a contractual relationship, I find that these allegations do not state separate tort claims for the purposes of applying the six-year statute of limitations. Accordingly, for statute-of-limitations purposes, Counts Three and Four of the complaint are governed by N.J.S.A. 12A:2–725, and when the tolling issue has been clarified, the court will rule on defendants' renewed motions to dismiss these counts.

■ I now turn to Foodtown's contention that the four-year statute of limitations does not apply to Count Five in the complaint based upon "unjust enrichment." It is well established that when an action arises in which the court has concurrent jurisdiction to grant either equitable or legal relief, "equity will withhold its relief where the applicable statute of limitations would bar the concurrent legal remedy." *Cope v. Anderson,* 331 U.S. 461, 464, 67 S.Ct. 1340, 1341, 91 L.Ed. 1602 (1947). I am mindful of decisions in the Third Circuit assessing concurrency, not on the basis of availability of a legal remedy for the asserted violation, but according to whether equitable relief is needed to make the plaintiff whole. If so, an applicable statute of limitations bars the legal remedy but the propriety of equitable relief is a matter of laches. *Churma v. United States Steel Corp.,* 514 F.2d 589, 590 n.2 (3d Cir. 1975); *Gruca v. United States Steel Corp.,* 495 F.2d 1252, 1256 (3d Cir. 1974). *See also Winslow, Cohu & Stetson, Inc. v. Skowronek,* 136 N.J.Super. 97, 105, 344 A.2d 350 (Law Div. 1975). Since equitable relief may be grant-

ed only when the remedy at law is inadequate, when the tolling issue has been properly elucidated through amendment of the pleadings, thereby determining the adequacy of the legal remedy here, I will consider whether plaintiff's claims for equitable relief are barred by the statute of limitations. I express no view here as to whether the propriety of equitable relief is a matter of laches, or whether it is the availability rather than the adequacy of legal redress that harmonizes with the Supreme Court's interpretation of concurrency.

Defendants' motion to dismiss the complaint is, for the time being, denied. Plaintiff is granted ten days from the date of receipt of this opinion to file and serve an amended complaint to meet the particularity requirements of Fed.R.Civ.P. 9(b) and the fraudulent concealment doctrine. Defendants shall respond to the amended pleading within ten days after service, whereupon the court shall allow the parties thirty days to take discovery, limited to the tolling or fraudulent concealment issue. Furthermore, the court will rehear defendants' renewed motions to dismiss the complaint on the first motion day in the month of January 1981.

## ON RENEWED MOTION TO DISMISS

This case is before me on defendants' renewed motion to dismiss plaintiff's amended complaint based upon the statute of limitations on the grounds that (1) plaintiff has failed to meet the particularity requirements of Fed.R.Civ.P. 9(b) and the fraudulent-concealment doctrine; or (2) in the alternative, plaintiff has failed to establish due diligence and reasonable care in ascertaining the alleged fraud so as to toll the applicable statute of limitations. Pursuant to Fed.R.Civ.P. 12(b), this motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, as matters outside the pleadings have been considered by the court, and the parties have been given reasonable opportunity to present all pertinent material to the court.

To earn summary decision, a party must merit judgment as a matter of law upon genuinely indisputable material facts. Fed.R.Civ.P. 56(c). Only a clear showing of authentic nondispute will satisfy the Rule 56(c) standard, which demands the absence of triable fact issues. *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978). The movant bears this burden. *Manetas v. International Petroleum Carriers, Inc.*, 541 F.2d 408, 413 (3d Cir. 1976). The opposing party receives the benefits of all reasonable doubts and inferences drawn from underlying facts. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *Cinema Service Corp. v. Twentieth Century-Fox Film Corp.*, 477 F.Supp. 174, 175 (W.D.Pa.1979). A disfavored motion, summary judgment should only issue when the movant demonstrates a clear, uncontestable right to judgment, and the opponent is not entitled to judgment under any circumstances. *Ledwith v. Douglas*, 568 F.2d 117, 119 (8th Cir. 1978). The record must be adequate for determination of the legal questions raised; a deficient factual foundation cannot support summary resolution. 6 Moore's Federal Practice ¶ 56.15 at 609 (2d ed. 1980). The slightest doubt as to the facts precludes granting the motion. *Tomalewski v. State Farm Life Insurance Co.*, 494 F.2d 882, 884 (3d Cir. 1974).

On October 7, 1980, defendants filed a motion to dismiss the complaint based upon the statute of limitations. In my November 18, 1980, opinion, I held that the four-year statute of limitations period set forth in N.J.S.A. 12A:2–725 applied to the first four counts of plaintiff's complaint. However, I noted that the limitation provisions set forth in that section did not alter the common-law principles regarding the tolling of the statute of limitations, and that defendants' fraudulent concealment of a cause of action would suspend the running of the statute of limitations in this case pursuant to N.J.S.A. 12A:2–725(4). Accordingly, I denied defendants' motion to dismiss and granted plaintiff leave to amend its complaint to meet the particularity re-

quirements of Fed.R.Civ.P. 9(b) and the fraudulent concealment doctrine. I also indicated that upon additional discovery as to the tolling and fraudulent-concealment issues, I would hear defendants' renewed motion to dismiss the complaint.

On December 2, 1980, plaintiff filed an amended complaint setting forth the particular circumstances of the defendants' alleged overcharges to Foodtown and defendants' course of concealment.[1] Plaintiff alleges that under the Agreement between the parties, Foodtown would be charged only Sigma's *actual* landed costs for the merchandise. Amended Complaint at ¶ 15. While Sigma's landed costs in the Agreement were computed at a duty rate of 36% of the invoice FOB Japan and $.10 per dozen, on or about April 8, 1975, Sigma allegedly learned from the United States customs duty service that the merchandise would be subject to the lower duty rate of 18% of the invoice FOB Japan and $.05 per dozen. Amended Complaint at ¶¶ 14, 15, 16. The complaint further alleges that commencing in August 1975

> Sigma, which alone had knowledge that it had paid a duty rate which was approximately 50% lower than the duty rate which was included in the unit prices stated in the Agreement, deliberately concealed this fact from Foodtown despite its obligation under the Agreement to charge Foodtown only its landed costs and to provide Foodtown with verification of its landed costs for the merchandise.
>
> Sigma falsely and fraudulently represented to Foodtown Sigma's landed costs for the merchandise by charging Foodtown through the invoices accompanying each delivery at a customs duty rate which was substantially in excess of the rate paid by Sigma upon importation of the merchandise. Sigma falsely and fraudulently represented on the invoices that its landed costs included the higher duty rate

of 36% FOB Japan and .10 per dozen, whereas the duty rate actually paid by Sigma was in fact the lower rate of 18% FOB Japan and $.05 per dozen.

Amended Complaint at ¶ 18. *See also* Amended Complaint at ¶¶ 17, 19, 20, 21. Foodtown states that in reliance "upon Sigma's reputation, status and position in the importing industry, and upon Sigma's obligations under the Agreement to charge Foodtown only Sigma's actual landed costs for the merchandise . . .," Foodtown paid the amounts demanded by Sigma. Amended Complaint at ¶ 23.

The amended complaint further alleges that in early February 1980, Foodtown first learned of these overcharges as a result of a meeting between its general manager and a former employee of Sigma; the precise amounts of the overcharges were not learned until March 5, 1980. Amended Complaint at ¶¶ 25, 26. Foodtown states that

> Foodtown did not, and could not have, discovered the fact or the amount of the overcharges prior to the meeting of February, 1980 described at Paragraph 25. Sigma alone had knowledge of the overcharges, and Sigma had, since April 1975, deliberately concealed these overcharges from Foodtown and had misrepresented to Foodtown the amount of its landed costs by representing that its landed costs included the higher duty rate, in violation of its obligations under the Agreement.

Amended Complaint at ¶ 27.

Plaintiff's amended complaint avers active concealment of the cause of action. Courts have distinguished between this type of fraudulent concealment and the situation where defendant does nothing to conceal his wrong:

> At least two types of fraudulent behavior toll a statutory period. *Bailey v. Glover*, 88 U.S. 342, 21 Wall. 342, 22 L.Ed. 636 (1875). In the first type, the most

---

1. Defendants argue that since plaintiff only amended the third and fourth counts of the complaint, all other counts must be dismissed. In determining what period of limitations applies, the essence of the action controls, rather than the form in which it is pleaded. *See Holdridge v. Heyer-Schulte Corp. of Santa Barbara*, 440 F.Supp. 1088, 1095 (N.D.N.Y.1977). I read the amendments to plaintiff's complaint as relevant to all counts.

common, the fraud goes undiscovered even though the defendant after commission of the wrong does nothing to conceal it and the plaintiff has diligently inquired into its circumstances. The plaintiffs' due diligence is essential here. *Morgan v. Koch*, 419 F.2d 993 (7th Cir. 1969); *Developments in the Law—Statutes of Limitations*, 63 Harv.L.Rev. 1177 (1950). In the second type, the fraud goes undiscovered because the defendant has taken positive steps after commission of the fraud to keep it concealed.... Dawson, *Fraudulent Concealment and Statutes of Limitations*, 31 Mich.L.Rev. 875 (1933). This type of fraudulent concealment tolls the limitations period until actual discovery by the plaintiff. The court in *Smith v. Blachley*, 198 Pa. 173, 47 A. 985 (1901), aptly stated:

> The cases which hold that, where fraud is concealed, or, as sometimes added, conceals itself, the statute runs only from discovery, practically repeals the statute *pro tanto*. Fraud is always concealed. If it was not no fraud would ever succeed. But, when it is accomplished and ended, the rights of the parties are fixed. The right of action is complete. If the plaintiff bestirs himself to inquire, he has ample time to investigate and bring his action. If both parties rest on their oars, the statute runs its regular course. But, if the wrongdoer adds to his original fraud affirmative efforts to divert or mislead or prevent discovery, then he gives to his original act a continuing character, by virtue of which he deprives it of the protection of the statute until discovery.

*Id.* at 987.

*Tomera v. Galt*, 511 F.2d 504, 510 (7th Cir. 1975). *See also Robertson v. Seidman & Seidman*, 609 F.2d 583, 593 (active concealment of fraudulent conduct tolls the statute of limitations in favor of the defrauded party until such time as he actually knew of the fraudulent conduct of the opposing par-

ty); *Sperry v. Barggren*, 523 F.2d 708, 711 (7th Cir. 1975) (should active concealment be found, then the statute is tolled until actual discovery; if no active concealment is present, then the issue becomes whether knowledge of the alleged fraud could reasonably have been acquired with the exercise of due care).

Other cases dealing with the fraudulent concealment doctrine have not expressly differentiated between the type of fraudulent conduct which may toll the applicable limitations period. Rather, these cases seem to require that plaintiff exercise "reasonable care and diligence in seeking the facts that demonstrate fraud." *Roberts v. Magnetic Metals Co.*, 463 F.Supp. 934, 945 (D.N.J.1978).[2] In order to invoke the doctrine of fraudulent concealment,

> the plaintiff must have remained ignorant of the fraud "without any fault or want of diligence or care on his part." *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 348, 22 L.Ed. 636 (1874). It is well established that a plaintiff may not merely rely on his own unawareness of the facts or law to toll the statute. *Morgan v. Koch*, 419 F.2d 993, 997 (7th Cir. 1969); *Laundry Equip. Sales Corp. v. Borg-Warner Corp.*, 334 F.2d 788, 792 (7th Cir. 1964). The plaintiff, rather, has the burden of showing that he "exercised reasonable care and diligence in seeking to learn the facts which would disclose fraud." *Morgan v. Koch, supra*, 419 F.2d at 997. The statutory period "[does] not await appellant's leisurely discovery of the full details of the alleged scheme." *Klein v. Bower*, 421 F.2d 338, 343 (2d Cir. 1970).

*Hupp v. Gray*, 500 F.2d 993, 996 (7th Cir. 1974). *See also Osadchy v. Gans*, 436 F.Supp. 677, 681 (D.N.J.1977); *Kohler v. Barnes*, 123 N.J.Super. 69, 79, 301 A.2d 474 (Law Div. 1973). Thus, the limitations period begins to run when the plaintiff knew of facts which would have put a reasonable person on notice of a fraudulent scheme:

**2.** However, the court did distinguish *Tomera v. Galt, supra*, on the grounds that there were no allegations of affirmative concealment in the case before it which would make *Tomera* "apposite." *Roberts v. Magnetic Metals Co.*, 463 F.Supp. at 945.

Courts have repeatedly held that where there is any fact or circumstance which would arouse the suspicions of a reasonable person, that person has sufficient notice so that he must make inquiry. *Dayco Corp. v. Goodyear Tire & Rubber Co., supra* [523 F.2d 389] at 394; *Hupp v. Gray, supra* at 966; *Morgan v. Koch, supra* at 998. Where a plaintiff should have been aware of "at least the possibility of fraud," the limitations period begins to run. *Klein v. Shields & Co.,* 470 F.2d 1344, 1347 (2d Cir. 1972).

*Roberts v. Magnetic Metals Co.,* 463 F.Supp. at 945.

■ Viewing the inferences to be drawn from the underlying facts in the light most favorable to plaintiff, *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970), I cannot find that defendant, as a matter of law, should prevail in this action.[3] Should this court adopt the reasoning of the first line of cases set forth above, plaintiff's allegations of affirmative fraudulent concealment, if proved at trial, would toll the statute of limitations until February 1980 when the plaintiff actually discovered the overcharges. The affidavit submitted by plaintiff on its behalf indicates that certain individuals at Sigma deliberately concealed, and took all possible steps to prevent Foodtown's discovery of, the fact that the dinnerware was coming in at the lower 18% rate. Brooks Affidavit at ¶¶ 14, 15. Further, Mr. Brooks states that immediately prior to the first deliveries, and in order to forestall inquiries by Foodtown as to the amount of landed costs actually paid by defendants, Sigma forwarded documents to Foodtown to make it appear that the merchandise was being imported at the 36%

rate. *Id.* at ¶ 16. In sharp contrast with the Brooks affidavit is the affidavit of Martin Sperling, in which he charges that "all of the statements of Mr. Brooks alleging [his] participation in a concealment of information from Foodtown are completely *false."* Sperling Affidavit at ¶ 1. These genuine disputes as to material facts regarding the circumstances surrounding this transaction render this case inappropriate for an award of summary judgment in defendants' favor. Issues of fact must be resolved by trial and not by affidavits.[4]

■ If no active concealment is present, or if this court requires the exercise of due diligence and reasonable care in all fraudulent-concealment cases, then the issue becomes whether knowledge of the alleged fraud could reasonably have been acquired prior to the expiration of the four-year limitations period with the exercise of due care. Foodtown argues that the contract provided for actual landed costs, and that it was defendant's duty to provide verification of these costs in accordance with the contractual terms. Whether or not plaintiff has exercised due diligence with regard to the transaction at issue, or whether or not there were any facts or circumstances "which would arouse the suspicions of a reasonable person" such that Foodtown should have made inquiry at an earlier date, *Roberts v. Magnetic Metals Co.,* 463 F.Supp. at 945; *Hupp v. Gray,* 500 F.2d at 997, are factual determinations which must be left for trial.

Accordingly, defendants' renewed motion to dismiss plaintiff's complaint based upon the statute of limitations is denied. Plaintiff will submit an order within 10 days.

---

3. There can be no doubt that the amended complaint satisfies the particularity requirement of Fed.R.Civ.P. 9(b). Rule 9 must be read together with Rule 8, which requires that plaintiff give through his pleadings notice to defendant of the nature of his claims in short plain statements. *See Tomera v. Galt,* 511 F.2d at 508. Considering the flurry of affidavits and exhibits submitted to the court directed to the merits of plaintiff's fraudulent-concealment claim, it cannot seriously be contended that the

allegations of fraud are not specific enough to inform defendant here of the conduct of which plaintiff complains. Likewise, plaintiff's allegations of due diligence are sufficient to withstand a motion to dismiss. *See* Amended Complaint at ¶¶ 18, 22, 23, 27.

4. Further, a material issue of fact exists as to whether the contract provided for an adjustment of the price in the event that there was a decrease in Sigma's actual landed costs.